January 27, 1978

## 78-6    MEMORANDUM OPINION FOR THE ADMINISTRATOR, DRUG ENFORCEMENT ADMINISTRATION

### Drug Enforcement Administration— Supergrade Positions Created by Reorganization Plan—Exemption From Competitive Service

This is in response to your oral request for our opinion on the question whether § 201(a) of the Crime Control Act of 1976 (Public Law 94-503; 90 Stat. 2425; 28 U.S.C. § 509, note) which excepts certain positions in the Drug Enforcement Administration (DEA) from the competitive service,[1] also applies to four positions in your Agency established by § 3(b) of Reorganization Plan No. 1 of 1968, 3 CFR 1063 (1966-1970 Compilation), creating the Bureau of Narcotics and Dangerous Drugs, the predecessor to DEA. Section 3(b) provides:

> There are hereby established in the Department of Justice, in addition to the positions transferred to that Department by this Plan, four new positions, appointment to which shall be made by the Attorney General in the competitive service. Two of those positions shall have compensation at the rate now or hereafter provided for GS-18 positions of the General Schedule and the other two shall have compensation at the rate now or hereafter provided for GS-16

---

[1]Section 201(a) provides as follows:

(a) Effective beginning one year after date of the enactment of this Act, the following positions in the Drug Enforcement Administration (and individuals holding such positions) are hereby excepted from the competitive service:

  (1) positions at GS-16, 17, and 18 of the General Schedule under section 5332(a) of Title 5, United States Code, and

  (2) positions at GS-15 of the General Schedule which are designated as—

    (A) regional directors,

    (B) office heads, or

    (C) executive assistants (or equivalent positions) under the immediate supervision of the Administrator (or the Deputy Administrator) of the Drug Enforcement Administration.

positions of the General Schedule (5 U.S.C. 5332). Each such position shall have such title and duties as the Attorney General shall prescribe.

The positions created by the Reorganization Plan are generally referred to as "SR" or "Supergrade-Equivalent" positions.

The former Administrative Counsel in the Office of Management and Finance, in a meticulous textual analysis of the pertinent statutes, concluded that the four SR positions are not subject to § 201(a) and that they consequently remain in the competitive service. His conclusion was based to a large extent on the language of § 201(a), which exempts from the competitive service "positions at GS-16, 17, and 18 of the General Schedules· under Section 5332(a) of title 5, United States Code." The memorandum points out that, technically, the GS-16 and 18 positions established by the Reorganization Plan are not under 5 U.S.C. § 5332(a). It also concludes that according to the language of the Reorganization Plan the four positions are in the Department of Justice, while § 201(a) is limited to positions in DEA. The final argument is that while the four SR positions were textually covered by the language of § 201(a) as it was originally introduced in the Senate,[2] the statute as finally enacted is less precise. In view of the pertinent provisions of the conference report that the conference substitute "adopts a modified and more restrictive version of the Senate bill provisions" (H. Conf. Rept. No. 94-1723, 94th Cong., 2d sess. 32, 1976), the memorandum takes the position that § 201(a) is to be narrowly construed; hence, since there are doubts as to the coverage of the four SR positions by the 1976 Act, they should be excluded from its operation.

Our difficulty with this approach is that it makes distinctions in the application of the legislation having no relevance to its purpose. That purpose, in the words of Senator Percy, the sponsor of the amendment on which § 201 is based, was to

> . . . place these DEA supervisory positions on a basis comparable to those of the FBI. Certainly there is a need for greater managerial flexibility and for the ability to move people about at one policy-making level in a law enforcement agency of this kind. (122 Cong. Rec. S 12434 (Daily ed., July 26, 1976)).

According to the conference report, the final bill adopts a more restrictive version. That version, however, consists essentially of providing that the bill would not apply to all DEA employees in GS-15, but only to those now listed in § 201(a)(2), thereby giving greater protection under the Veterans Preference Act to those who have served with the DEA for more than a year. In other words, the bill, as finally enacted, exempts certain classes of employees from the impact of the original amendment, based apparently on the congressional determination that GS-15 employees who are not regional directors, office heads, or executive assistants do not hold policymaking positions, and that the

---

[2]The pertinent language was "positions . . . to which grades GS-15 or above of the General Schedule under section 5332(a) of title 5, United States Code, apply . . . ." (122 Cong. Rec. S 12434 (Daily ed. July 26, 1976)).

purpose of the amendment can be carried out even if policymaking employees who served for more than a year would continue to enjoy the benefits of the Veterans Preference Act with respect to personnel actions other than reductions in rank or pay.

An interpretation of the statute excepting SR positions from its operation would be contrary to that purpose. To begin with, we doubt that Congress was aware of the existence of SR positions as opposed to the GS classification. Moreover, the four SR positions do not represent any particular class of positions which would render it rational to except them from the congressional determination that the Administrator should have greater flexibility over policymaking positions. Thus, while some of the Assistant Administrators in DEA have a GS rating, one is an SR; the same applies to the positions of Director and division heads. The determination as to whether a position should be in the GS or SR classification apparently was not made on the basis of the consideration that it involved less policymaking than a GS position, but at random, possibly on the basis of available slots in either classification. Similarly, we have been advised that at least one of the present top officials at DEA was moved from an SR to a GS position when he received a new assignment.

We therefore conclude that a distinction between a GS position and its SR equivalent is not consistent with the statutory purpose; hence, § 201(a) is to be read as being applicable to SR as well as to GS positions.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*